[Crim. No. 6451.   Second Dist., Div. One.   Mar. 31, 1959.]

THE PEOPLE, Respondent, v. PETE SHEPHARD, Appellant.

284

Cary G. Branch for Appellant.

Stanley Mosk, Attorney General, and John M. Huntington, Deputy Attorney General, for Respondent.

FOURT, J.—This is an appeal from a judgment of conviction of the crime of violation of section 11502, Health and Safety Code.

In an indictment filed in Los Angeles County, the appellant

was charged with a violation of section 11502, Health and Safety Code, in that he did, on or about March 11, 1958, agree to sell and give heroin to George Renty, and did thereafter sell and give to George Renty another substance in lieu of heroin. It was also alleged that the appellant had previously been convicted of the crime of violation of section 11500, Health and Safety Code, and judgment thereon was pronounced about January 4, 1954. The appellant pleaded not guilty and denied the prior conviction. The matter was tried before the court without a jury. Appellant was found guilty as charged.

It is difficult, from the record, to determine just what the situation is as to the prior conviction. The form prepared by the clerk (entitled "Minutes") which is set forth in the clerk's transcript recites that "no finding having been made as to the prior conviction." The reporter's transcript sets forth the following as being the words of the judge: "and the Court not having presented to it any evidence regarding the truth or falsity of the prior as alleged and as heretofore stated as being alleged, the Court, of course, finds the prior not to be true because of lack of evidence.

"Thereafter, you asked and were granted leave to make written application for probation. This is the time and place to which that matter has been finally continued."

However, there had been introduced into evidence fingerprint records and a certified copy of the prior commitment papers with reference to the prior conviction alleged in the indictment, and a stipulation by the defendant to the effect that he was the person mentioned in the documents referred to.

Immediately after the statement of the court to the effect that there was no evidence regarding the truth or falsity of the prior, the judge said, "You were arrested and convicted in 1950, 1953, 1955, 1956, 1957. Each time for narcotics." And with reference to the same matters, the court said, "last time he got nine months; the time before a year; the time before that he got nine months; the time before that he got a year."

The defendant, in any event, made an application for probation and the court permitted the filing of such application, though, under the evidence and circumstances of this case the defendant was, as a matter of law, ineligible to be granted probation. Probation was denied. Judgment was pronounced and the defendant was sentenced to the state prison as a first offender.

A résumé of the facts is as follows: Officer Renty of the

Los Angeles Police Department was working as an undercover plainclothes agent of the police department narcotic bureau. He saw the defendant on March 11, 1958, about noontime at the corner of 42nd Street and Central Avenue in Los Angeles. The policeman was with an informant named Earl Jones, whom he had met at the police station, and who resided on West 54th Street. Jones was acquainted with the defendant and at or about the time of the transaction with which we are concerned had said to Officer Renty, "That's Pete Shephard. We will be able to buy stuff from him. . . . He is a peddler." The officer and Jones then approached the defendant and Jones asked the defendant if he had anything. The defendant replied, "Yes. I have it stashed. Have you got a short?" The officer replied, "Yes." The officer, Jones and the defendant then walked to the officer's car, and at the defendant's direction drove to the Ruth Hotel on Fifth Street, which was several blocks from where they then were. Nothing in particular was said about money on the way down to the hotel. The officer drove the car, Jones sat in the middle of the front seat and the defendant sat next to the door in the front seat. When they arrived at the location of the hotel the defendant got out of the automobile and was gone a few minutes and then returned and said, "Let's go back on the avenue." Jones had remained in the car at the hotel. While riding back to 42nd Street and Central Avenue, Jones gave the defendant nine-dollars in exchange for a small balloon which appellant said was $9.00 worth. Upon receiving the balloon, Jones immediately passed it to Officer Renty. The defendant was then driven back to 42nd Street and Central Avenue, and defendant got out of the car. The officer then drove to the police building, marked and booked the balloon and its contents as evidence. The balloon contained a white powder resembling heroin, and an expert testified that the powder was not a narcotic.

Another expert in terminology and methods with respect to the narcotic traffic testified that the balloon has a significance in that it is one of the ways in which narcotics are packaged; that it is done so, in order that the container can be carried in the mouth or other body cavity without the narcotic dissolving or otherwise being affected. It was further testified that in a narcotics transaction, the question, "Do you have anything?" would mean, "Do you have any narcotics?" The phrase, "I have it stashed," would mean, "I have it hidden," and the term, "Do you have a short?" would mean, "Do you

have a car?" Further that such terms as "stash" and "short" are used frequently by people engaged in the trafficking of narcotics.

The appellant testified in his own behalf and denied that he had made any sale of narcotics or supposed narcotics to anyone. He did state, on examination, however, that he did know something about narcotics and that he had been convicted for the use of it. He stated that he knew what to do in making a purchase of it, that is, to give it the taste test to be sure it was heroin and not some other substance.

The defendant also testified that he knew Jones by the name of "Yocum Slim" and knew him to be a "dope fiend. That's because I did time with him a couple of times for narcotics."

The appellant contends:

(1) That section 11502, Health and Safety Code, is unconstitutional;

(2) That the indictment does not state a public offense;

(3) That the evidence is insufficient to support the charge in the indictment;

(4) That the testimony of Officer Renty is inherently improbable, and

(5) That it was a denial of due process not to produce Earl Jones as a witness in any stage of the proceedings.

Considering the first contention of the appellant; he insists that the statute is an improper exercise of the police power, and that the statute is vague, uncertain and unintelligible. It cannot be questioned that the police power of the state extends to matters having to do with the sale or possession of narcotics, and certainly the Legislature has the power to prohibit the possession or use of narcotics, whether such drugs are beneficial or detrimental. (*People* v. *Mistriel,* 110 Cal.App.2d 110, 112 [241 P.2d 1050]; *In re Weisberg,* 215 Cal. 624, 627 [12 P.2d 446]; *In re Rameriz,* 193 Cal. 633, 649 [226 P. 914, 34 A.L.R. 51].)

Apparently, the appellant questions whether the Legislature can enact such a statute under the guise of protecting the health and morals of the people, when in fact the statute prohibits a person from offering to sell a narcotic and delivering a substance in lieu of the narcotic.

The progress report to the Legislature, 1953 Regular Session, by the Assembly Interim Committee on Judiciary, Jan., 1953, Part XV, Final Report of Subcommittee on Narcotics, page 254, sets forth the following:

"2. Section 11502 is added to the code and will be entirely

new law. This will cover the individual who agrees to sell, furnish, transport, or give away any narcotic, and then delivers some other liquid, substance, or material. These individuals are known to be in a position to violate the law; but, for some reason, they may feel that they are dealing with a law enforcement officer and thus deliver tobacco, water, or some other substance with the result that they have had the intent to commit the crime but are testing out the officer. At the present time, nothing can be done to that person, except to charge with with (sic) 'bunco.' Under this statute it provides a penalty of not more than one year in the county jail or the state prison for 10 years.''

In any event, without the assistance of the interim committee report, it is apparent that the Legislature had the intention of discouraging anyone from engaging or appearing to engage in the narcotics traffic. Anything which gives sustenance, solace, comfort or encouragement in the selling of narcotics or in the agreeing to sell narcotics, can be condemned, and properly so, by the Legislature. It is clear that the statute in question was aimed at discouraging any traffic in narcotics and is therefore within the police power of the state.

It has been held that except where a court can say that a police regulation has no just relation to the object which it purports to carry out, and no reasonable tendency to protect the public safety and health, the decision of the legislative body as to the necessity or reasonableness of the regulation, is conclusive. (*Sullivan* v. *City of Los Angeles*, 116 Cal.App.2d 807, 810 [254 P.2d 590]; *Odd Fellows' Cemetery Assn.* v. *San Francisco*, 140 Cal. 226, 233 [73 P. 987].)

Section 11502 of the Health and Safety Code reads as follows:

''Every person who agrees, consents, or in any manner offers to unlawfully sell, furnish, transport, administer, or give any narcotic to any person, or offers, arranges, or negotiates to have any narcotic unlawfully sold, delivered, transported, furnished, administered, or given to any person and then sells, delivers, furnishes, transports, administers, or gives or offers, arranges, or negotiates to have sold, delivered, transported, furnished, administered, or given to any person any other liquid, substance, or material in lieu of any narcotic shall be punished by imprisonment in the county jail for not more than one year, or in the state prison for not more than 10 years.''

A reading of the section answers the assertions of the

appellant to the effect that it is vague, uncertain and unintelligible. Men of common intelligence do not have to guess at what it means. (*People* v. *McCaughan*, 49 Cal.2d 409, 414 [317 P.2d 974].) There is a reasonably adequate disclosure of the legislative intent regarding the evil to be combatted in language giving fair notice of practice to be avoided. (*In re Clarke*, 149 Cal.App.2d 802, 806 [309 P.2d 142].) A reading of the section discloses that it is a crime for a person to agree to sell a narcotic to someone, and then to deliver instead a non-narcotic substance.

The appellant's second contention is to the effect that the indictment is defective in not stating a public offense, and that there is a fatal variance between the pleading and the proof. In brief, the appellant asserts that the indictment charges the defendant with unlawfully agreeing to sell a narcotic, and that it does not charge the defendant with agreeing to unlawfully sell a narcotic. The indictment set forth that, "Pete Shephard did willfully, unlawfully and feloniously agree to sell, furnish and give heroin to George Renty, and did thereafter sell, give and furnish to said George Renty another substance and material in lieu of said heroin, in violation of section 11502, Health and Safety Code of the State of California."

In effect, the code section reads, "Every person who *agrees, consents, or in any manner offers to unlawfully sell* . . . any narcotic to any person, . . . . and then sells, delivers . . . or negotiates to have sold, delivered . . . to any person any other . . . substance . . . in lieu of any narcotic shall be punished . . . ." (Emphasis added.)

The purpose of an indictment is to inform the defendant of the charge he must meet at the trial. (*People* v. *Schoeller*, 96 Cal.App.2d 61, 64 [214 P.2d 565]; *People* v. *Pierce*, 14 Cal.2d 639, 645 [96 P.2d 784].) Under section 952, Penal Code, a charge is sufficient if it contains in substance a statement that the accused has committed an offense specified therein. (*People* v. *Benenato*, 77 Cal.App.2d 350, 361 [175 P.2d 296].)

We believe that the essential facts are set forth in the indictment, and if there is a defect, it is at most one of uncertainty. There was no objection made in the trial court, and the appellant is deemed to have waived such defect, if any there was, by a failure to demur. (*People* v. *Burke*, 22 Cal. App.2d 280 [70 P.2d 953]; *People* v. *Benenato, supra,* 77 Cal.

App.2d 350, 363; *People* v. *Brac,* 73 Cal.App.2d 629, 634-635 [167 P.2d 535].)

The appellant has not seen fit to advise us as to how, or in what fashion he was prejudiced by any failure to state the offense in the literal language of the statute. We are unable to find where there has been any miscarriage of justice in this case. (*People* v. *Schoeller, supra,* 96 Cal.App.2d 61, 64; Pen. Code, § 960.)

█ There was no fatal variance between the pleading and the proof in this case. The appellant has made no effort to demonstrate that he was in any wise misled in the making of his defense, or that he will be deprived of making a plea of former jeopardy in the event there ever should be another trial for the same offense. (*People* v. *Williams,* 27 Cal.2d 220, 226 [163 P.2d 692]; *People* v. *Braddock,* 41 Cal.2d 794, 799 [264 P.2d 521].) The appellant does not even state, at this time, how or in what fashion he was misled.

█ As to the claim that the testimony of the officer was inherently improbable, the rule ''is well settled that to warrant a rejection of statements given by a witness who has been believed by a jury, or trial court, there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions . . . .'' (*People* v. *Simpson,* 43 Cal.2d 553, 562 [275 P.2d 31].)

█ The appellant has failed to point out in what particular the evidence is insufficient. Even if we were inclined to reverse the judgment, we are not authorized to do so upon the ground of insufficient evidence unless it clearly appears that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion arrived at by the trier of fact. (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778].) From the recital of the facts heretofore set forth, it is clear that there was a violation of the provisions of section 11502 of the Health and Safety Code.

█ The appellant's final contention is to the effect that the defendant was denied due process of law for the reason that Jones, the informant, was not produced at the trial. There is no merit to such a contention. The informant in this case was a participant and a material witness to the sale, and under the circumstances, his identity must be disclosed upon cross-examination at the trial. (*People* v. *McShann,* 50 Cal.2d 802, 806, 808 [330 P.2d 33].) The officer was asked,

on cross-examination, the name and address of the informant and he disclosed the same. The prosecution, however, is not required to call any particular witness to the witness stand as long as there is fairly presented to the court the material evidence bearing upon the charge for which the defendant is on trial. (*People* v. *Tuthill,* 31 Cal.2d 92, 98 [187 P.2d 16]; *People* v. *Parry,* 105 Cal.App.2d 319, 323 [232 P.2d 899]; *People* v. *Chapin,* 145 Cal.App.2d 740, 748 [303 P.2d 365].) Further, the appellant in this case testified that he had known the informant for some time.

A thorough reading of the entire record in this case convinces us that the appellant was properly and fairly convicted of a violation of section 11502, Health and Safety Code, and that if there was any error it was not prejudicial and there was no miscarriage of justice.

The judgment is affirmed.

White, P. J., and Lillie, J., concurred in the affirmance of the judgment.

Appellant's petition for a hearing by the Supreme Court was denied May 27, 1959.