[Crim. No. 4249.    First Dist., Div. One.    Nov. 14, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. WARDELL HICKS, Defendant and Appellant.

Paul C. Rosenthal, under appointment by the District Court of Appeal, and Gerald E. Ambinder for Defendant and Appellant.

Stanley Mosk, Attorney General, Albert W. Harris, Jr., and Edward P. O'Brien, Deputy Attorneys General, for Plaintiff and Respondent.

BRAY, P. J.—Defendant appeals from conviction, after jury trial, of violation of section 11503, Health and Safety Code (offering unlawfully to sell and furnish a narcotic to a person and delivering a substance other than such narcotic).[1]

### Sole Question Presented.

Is section 11503 unconstitutional as being vague, uncertain and arbitrary? No.

### Evidence.

Defendant does not contend that the evidence is insufficient to support the conviction. A brief résumé of it follows:

The facts are not in dispute. On April 21, 1962, at about 11 p.m. Officer Lawrence of the San Francisco Police Department went into a bar on Divisadero Street known as the Morocco Club and saw defendant seated at a table with a woman. During the next 10 or 15 minutes Officer Lawrence observed three men successively seat themselves at the defendant's table. With each such person there was a movement of hands under the table and an object which appeared as if it might be money was passed over the top of the table. After the third man left, Officer Lawrence made a friendly gesture to defendant, and defendant then called him to his

---

[1] Defendant admitted two prior felony convictions, violation of section 11714 (furnishing narcotics to minors) and two counts of violation of section 11500 (unlawful possession of a narcotic other than marijuana).

table and offered to sell him marijuana cigarettes. Officer Lawrence refused the offer but stated that he was going to have a party and was interested in purchasing a larger amount of marijuana at a later date. Arrangements were made to meet on April 23, 1962, for that purpose.

Officer Lawrence returned to the club at approximately 8:30 p.m. on April 23, 1962, and asked defendant whether or not he had ''got the stuff.'' Defendant said he had only about 15 or 20 marijuana cigarettes. Officer Lawrence told defendant that he was interested in that amount, whereupon defendant told Lawrence that if he (defendant) went out he might be able to get more. Defendant then left the club.

Defendant returned to the club some 50 minutes later with a brown paper bag and motioned Officer Lawrence outside. According to Officer Lawrence, defendant then said: ''I'm not going to hand this stuff to you. I'm going to put it down on this doorway so you can pick it up and follow me back into the bar and pay me off.'' Defendant then put the bag down. Officer Lawrence picked it up and followed defendant back into the club. Defendant proceeded to the men's lavatory. Officer Lawrence stopped at the bar to change a $20 bill, and then followed defendant into the men's room. He there handed defendant two $20 bills and a $10 bill, the amount agreed upon for the quantity of marijuana purported to be sold. Officer Lawrence then left the club followed by defendant. Defendant was arrested as he left the club. The money was not on his person but was later found secreted behind some beer cases between the lavatory and south wall of the club.

Defendant did not testify.

The contents of the bag picked up by Officer Lawrence turned out on analysis not to be marijuana.

### CONSTITUTIONALITY OF SECTION 11503.

Section 11503 provides: ''Every person who agrees, consents, or in any manner offers to unlawfully sell, furnish, transport, administer, or give any narcotic to any person, or offers, arranges, or negotiates to have any narcotic unlawfully sold, delivered, transported, furnished, administered, or given to any person and then sells, delivers, furnishes, transports, administers, or gives, or offers, arranges, or negotiates to have sold, delivered, transported, furnished, administered or given to any person any other liquid, substance, or material in lieu of any narcotic shall be punished by imprisonment

in the county jail for not more than one year, or in the state prison for not more than 10 years.''

The contention of defendant that the section is unconstitutional is directly answered negatively to him in *People* v. *Shephard* (1959) 169 Cal.App.2d 283 [337 P.2d 214] (petition for hearing denied by Supreme Court) where it was contended that section 11502 was unconstitutional. Section 11502 as it then read was repealed in 1959, and its identical wording adopted in section 11503.

In upholding the constitutionality of the then section 11502 in a fact situation very similar to that in the case at bench, the court pointed out that the 1953 progress report to the Legislature by the Assembly Interim Committee on Judiciary, gave the reasons for the enactment of section 11503. The report noted that prior to the enactment of that section nothing could be done with persons who agree to furnish, etc., a narcotic but because they might feel that they were dealing with a law enforcement officer, deliver some nonnarcotic substance to test out the officer. The result, the committee noted, was that although they had the intent to commit a narcotics crime, they were in a position to violate the law subject only to the normal ''bunco'' provisions. The proposed section would permit a more serious penalty. The court then held that the statute was aimed at preventing encouragement in the selling of narcotics, or in the agreeing to sell them, that the subject had a reasonable relation to the object which it purported to carry out and to a tendency to protect the public safety and health, and that the statute was well within the police power of the state.

Defendant seeks to escape the effect of *Shephard* in two ways. He contends (1) that the only purpose of the statute is ''to accomplish indirectly what is proscribed to be done directly, namely to entrap a suspected criminal,'' and (2) that the statute is vague as no provision is made for determining the intent of the person delivering the nonnarcotic at the time of the offer to sell.

As stated in 14 California Jurisprudence 2d section 208, page 453, ''In the absence of some persuasion or inducement outside the ordinary transaction of purchase and sale between a willing purchaser and willing seller, where a person is engaged in illegal sales, the fact that a particular sale for which he is prosecuted was induced by a police officer does not show entrapment ... . The mere request for the unlawful commodity and payment of the price thereof is not

considered, in law, such an inducement to the unlawful sale as would render the defense of entrapment effective.''

There is nothing in the statute which permits or countenances ''entrapment.'' To constitute entrapment the criminal design must originate in the mind of the officer, not in that of the accused. The accused must be induced by the officer to commit a crime which he would not otherwise have committed. (See *People* v. *Burnett* (1962) 204 Cal.App.2d 453, 456 [22 Cal.Rptr. 320].) ''Entrapment is an affirmative defense imposing upon the accused the burden of proving that he was induced to commit the crime of which he is charged. [Citation.] The existence or nonexistence of entrapment is a question of fact for the trier of fact who is the sole judge of the weight and worth of the evidence.'' (*People* v. *Gutierrez* (1954) 128 Cal.App.2d 387, 390 [275 P.2d 65].)[2] There is nothing in section 11503 that changes the existing rules as to entrapment.

As to the second contention, that the section is vague as not providing criteria for determining intent, defendant urges that the statute might apply to innocent conduct, citing three hypothetical situations where the offers to sell were either to quiet a harassing wife or were in jest.

'' [T]he legality of statutes is not measured by extreme or unlikely situations.'' (*People* v. *Ferguson* (1933) 129 Cal.App. 300, 304 [18 P.2d 741].) Moreover, defendant may not question the application of the statute as to others who are not in the same category as himself. Defendant did not testify that his offer to sell narcotics to the officer was innocently done. He did not testify at all. Hence, there is no evidence to bring him in the category of one desiring to escape harassment or acting in jest. ''It is a well-settled rule, however, that in order to raise a constitutional question the party complaining must show that his rights are injuriously affected by the portion of the law he is attacking; that it must appear he is aggrieved by the operation of that particular part of the law.'' (*In re Durand* (1935) 6 Cal.App.2d 69, 70 [44 P.2d 367]; see *American Distilling Co.* v. *Johnson* (1955) 132 Cal.App.2d 73, 80 [281 P.2d 598]; *People* v. *Black* (1941) 45 Cal.App.2d 87, 96 [113 P.2d 746]; *People* v. *Perry* (1931) 212 Cal. 186, 193 [298 P. 19, 76 A.L.R. 1331]; *In re Cregler* (1961) 56 Cal.2d 308, 313 [14 Cal.Rptr. 289,

---

[2]The issue of entrapment was presented to the jury under full and fair instruction of the court. Obviously the jury found against defendant on this issue.

363 P.2d 305].)

■ As pointed out in *Shephard, supra,* the Legislature clearly intended to discourage anyone from engaging or *appearing to engage* in the narcotics traffic. "In any event, without the assistance of the interim committee report, it is apparent that the Legislature had the intention of discouraging anyone from engaging or appearing to engage in the narcotics traffic. Anything which gives sustenance, solace, comfort or encouragement in the selling of narcotics or in the agreeing to sell narcotics, can be condemned, and properly so, by the Legislature. ■ It is clear that the statute in question was aimed at discouraging any traffic in narcotics and is therefore within the police power of the state." (*People* v. *Shephard, supra,* p. 288.) ■ As it cannot be said that the statute has no reasonable tendency to protect the public safety and health, "the decision of the legislative body as to the necessity or reasonableness of the regulation, is conclusive." (*People* v. *Shephard, supra,* p. 288.)

Defendant admits that the Legislature has the power to prohibit the obtaining of money by false pretenses; therefore, it may define the crime and punish it as it sees fit, subject only to the constitutional prohibition of cruel and unusual punishment. (*People* v. *Knowles* (1950) 35 Cal.2d 175, 181 [217 P.2d 1].) ■ Thus, what is generally regarded as "bunco" may be defined as a narcotics offense when it occurs in connection with an offer to sell narcotics.

The section not only covers the situation where the offeror fools a law enforcement officer by not carrying out his commitment to deliver a narcotic, but also covers the serious situation in which a narcotic addict becomes a victim of the offeror. It is a matter of common knowledge that an addict is an easy prey of those who would take his money and who fail to carry out their bargain. This is an evil growing out of the narcotics traffic which the Legislature obviously sought to remedy.

■ Applying to section 11503 the test of constitutionality required in *Perez* v. *Sharp* (1948) 32 Cal.2d 711, 728 [198 P.2d 17], taken from *In re Di Torio,* 8 F.2d 279, 281, " 'An act is void where its language appears on its face to have a meaning, but it is impossible to give it any precise or intelligible application in the circumstances under which it was intended to operate.' " We find nothing vague or uncertain in the statute. There is nothing unintelligible or ambiguous in the language of the act. Its language is quite clear. It says,

so far as applicable here, that every person who offers to sell a narcotic and delivers a nonnarcotic substance is guilty of a crime. This is true, whether at the time of the offer the offeror actually intends to deliver a narcotic or intends only to deliver a nonnarcotic. ▮▮ It is the delivery of a nonnarcotic that completes the crime. ▮▮ Anyone reading the statute should have no difficulty in understanding what it means. In the statute "[t]here is a reasonably adequate disclosure of the legislative intent regarding the evil to be combatted in language giving fair notice of practice to be avoided." (*People* v. *Shephard, supra,* p. 289.)

Nor is there anything vague in the language in the statute "offers to *unlawfully* sell," "any narcotic *unlawfully* sold." (Italics added.) As said in *Shephard, supra,* "Men of common intelligence do not have to guess at what it means. [Citation.]" (P. 289.) The quoted language clearly refers to the regulatory provisions regarding narcotics set forth in sections 11000-11576, Health and Safety Code. Thus, the statutes set forth the criteria for the proscribed conduct. Prospective violators of section 11503 have reasonable notice both of the nature of the acts proscribed and the fact that they constitute criminal offenses.

*In re Blaney* (1947) 30 Cal.2d 643 [184 P.2d 892], and *In re Bell* (1942) 19 Cal.2d 488 [122 P.2d 22], cited by defendant, are not applicable. *Blaney* dealt with the "hot cargo" act which the court found was so sweeping and vague as to interfere with the constitutional right of free speech and the right of peaceful picketing. *Bell* dealt with an antiloitering ordinance which clearly prohibited peaceful picketing. Although the court said concerning the ordinance, "If certain of its provisions operate to prohibit peaceful picketing, they are invalid even though they also prohibit acts that may properly be made illegal" (p. 496) and held that the portion of the ordinance prohibiting peaceful picketing was invalid, the court discharged the habeas corpus writ because "petitioners have failed to sustain the burden of proving that they were not convicted of the one valid provision of the ordinance prohibiting acts of violence. ..." (P. 505.) Obviously, there is nothing in either of these cases that affects the determination of the constitutionality of section 11503.

*People* v. *Jackson* (1963) 59 Cal.2d 468 [30 Cal.Rptr. 329, 381 P.2d 1], has no application in the case at bench. That was a prosecution for violation of section 11501 for offering to sell narcotics. The evidence showed that the defendant offered to sell heroin to an undercover narcotics agent, accep-

ted the price thereof, but refused to make delivery, denying that he had ever seen the agent before. The court held erroneous an instruction to the effect that to constitute the crime of offering to sell narcotics the only intent required is the intent to make the offer, and that an intent to make a sale is not necessary. We are dealing with section 11503, in which the important element is the delivering of a nonnarcotic substance after agreeing, with whatever intent, to deliver a narcotic.

Defendant at oral argument attempted to raise a contention not theretofore made at any stage of the cause. This was that the evidence failed to show that the substance delivered by defendant to Officer Lawrence, although not marijuana, might not have been some other type of narcotic. The material given by defendant to Officer Lawrence was analyzed by the police department's expert. He referred to this as "vegetable material." He was asked if there was any marijuana in it. He replied that there was not. He was not asked if it contained any other narcotic. Defendant now contends that in order to convict defendant it should have been shown that the substance contained no other narcotic. There are two answers to this contention: (1) Although the information charged that defendant offered to sell a narcotic, the sole evidence offered was that the particular narcotic he was offering to sell was marijuana. The issue, as narrowed by the evidence and the conduct of the parties and the court at the trial, was, did he offer to sell marijuana and did he deliver something other than marijuana. Moreover, it is clear from reading the record that no contention was ever made that any narcotic was supplied. The court, counsel and the defendant clearly considered there was no issue as to any narcotic other than marijuana. (2) ▮▮▮ This court is not required to consider a contention not mentioned in the appellant's brief but raised, instead, at the oral argument. (See *People* v. *Pierce* (1962) 207 Cal.App.2d 526, 527 [24 Cal.Rptr. 499].)

The judgment is affirmed.

Sullivan, J., and Molinari, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 7, 1964. Peters, J., was of the opinion that the petition should be granted.