[Crim. No. 12853.   Second Dist., Div. Five.   Nov. 15, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. HARRY NORTHERN, Defendant and Appellant.

Arthur Kessler, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Raymond M. Momboisse and Philip R. Birney, Deputy Attorneys General, for Plaintiff and Respondent.

KAUS, P. J.—In a two-count information defendant was charged with violations of section 11531 of the Health and Safety Code (sale of marijuana) and section 11503 (sale of a

substance falsely represented to be a narcotic.) After a jury trial he was found guilty on both counts.

On April 11, 1966, Officer Brown of the Los Angeles Police Department was working "undercover narcotics." He knew the defendant who had sold him some pills on April 7. He met him on the corner of Fifth and Main. Defendant asked him "how were the pills?" Brown said "they didn't do me any good." Defendant said: "I have a joint if you want to buy it." Brown said he did and defendant told him to meet him across the street at the Belmont Grill. They walked into the restroom. Brown gave defendant $1.00. Defendant gave Brown fifty cents and a brown cigarette which, on later examination by the police chemist, was found to contain marijuana. After this transaction Brown and defendant had a beer together and walked around town for awhile. They were together for about an hour.

Brown again met defendant at the Belmont Grill on April 14. Defendant was at the bar talking to another gentleman. Brown and another officer had a beer together. When Brown was getting ready to leave defendant said "wait a minute. I have got some grass[1] if you still want it." Defendant walked to the restroom. When he returned he handed Brown a tinfoil package. Brown gave defendant $5.00.

An examination of the contents of the package by another police chemist revealed that what defendant delivered to Brown was not a narcotic.

Cross-examination of Brown was uneventful. It fastened on a statement by Brown to the effect that before April 11 he had made about seven or eight purchases of marijuana in an undercover capacity. He could not recall the date or the seller of the last purchase immediately before April 11. He had no transactions between April 11 and April 14. He recalled the clothing defendant had worn when he had sold pills on April 7. It was the same as defendant's clothing on April 11. He had refreshed his recollection in that respect. He did not know the name of the police officer who was directing traffic on the corner of Fifth and Main on April 11. The first purchase he had made as an undercover officer was from a male whom he described in some detail. He remembered the place of the purchase, but not the date. The second purchase was from a female whose appearance he described. He did not know exactly how many days elapsed between the first and second purchases. The

---

[1] In the argot of narcotics users, "grass" means marijuana.

third purchase was from another female, also described in detail. He recalled the address. The fourth transaction was with a male, again described in detail. He recalled the names of all four sellers. He did not recall from whom he made the fifth purchase.

Although the record compels the conclusion that defendant knew that Brown expected to buy marijuana on each occasion, there is no direct evidence one way or another concerning defendant's knowledge or belief as to the nature of the contents of the tinfoil package delivered on April 14.

Defendant did not testify.

During closing argument the prosecutor made the following statements to the jury: ''Looking at this evidence *which, incidentally, has not been refuted by the Defendant,* there is no controverting evidence from the other side. . . .

''The case, as I see it, referring to the evidence coming from the witness stand, is overwhelmingly strong as compared to that coming from that Defendant. . . . *There is no evidence offered by the Defendant to controvert what the People offered.* They certainly have that opportunity . . . I was in the process of stating that the evidence in this case is uncontroverted in that, *although the defense has an opportunity to offer evidence rebutting the evidence offered by the People, this was not done in this case.* . . .'' (Italics added.)

The court instructed the jury as follows: ''It is a constitutional right of a defendant in a criminal trial that he may not be compelled to testify. Thus the decision as to whether he should testify is left to the defendant, acting with the advice and assistance of his attorney. You must not draw any inference of guilt from the fact that he does not testify, nor should this fact be discussed by you or enter into your deliberation in any way.''

The argument to which defendant's counsel devotes the major portion of his exceptionally well written briefs is that the above quoted remarks of the prosecutor violated defendant's Fifth Amendment rights. (*Griffin* v. *California,* 380 U.S. 609 [14 L.Ed.2d 106, 85 S.Ct. 1229].) Counsel raises the question whether in a case where the only witness whom defendant could possibly call is the defendant himself, a mere statement that the prosecution's case is uncontradicted constitutes a comment on defendant's failure to testify. We need not decide that point, for as we read the first of the comments quoted above, it is difficult to interpret it as

anything except a direct reference to defendant's failure to take the witness stand.

Nevertheless, comment on the defendant's failure to testify does not make the conviction automatically reversible. (*Chapman* v. *California*, 386 U.S. 18, 22-24 [17 L.Ed.2d 705, 709-710, 87 S.Ct. 824]; *People* v. *Modesto*, 66 Cal.2d 695, 711 [59 Cal.Rptr. 124, 427 P.2d 788].) Upon the examination of this entire record we entertain no reasonable doubt that the prosecutor's comment did not contribute to defendant's conviction. (*People* v. *Ross*, 67 Cal.2d 64, 75 [60 Cal.Rptr. 254, 429 P.2d 606].)

At the time of the oral argument herein, defendant also complained of the instruction (CALJIC 51. (re-revised)). The instruction was given at the request of the People. There are at least two recent decisions (*People* v. *Molano*, 253 Cal.App.2d 841, 846-847 [61 Cal.Rptr. 821]; *People* v. *Horrigan*, 253 Cal.App.2d 519, 521-523 [61 Cal.Rptr. 403]) which say that it is error to give the instruction. On the other hand *People* v. *Graham*, 251 Cal.App.2d 513, 519 [59 Cal.Rptr. 577] and *People* v. *Elliott*, 241 Cal.App.2d 659 [50 Cal.Rptr. 757] appear to be contra.[2] We need not choose between these views, since if it was error to give the instruction, it was not prejudicial for the reason noted.

■ A more serious problem is presented by the instructions with respect to count II, the charged violation of section 11503.

With respect to both counts the court instructed the jury as follows: ''In a crime such as that of which defendant is charged in Counts 1 & 2 of the information, there must exist a union or joint operation of act or conduct and a certain specific intent.

''In the crimes of the sale of marijuana *and offering to sell marijuana and delivering a non-marijuana substance,* there must exist in the mind of the perpetrator *the specific intent to*

---

[2]More specifically, *Elliott* holds that it is not reversible error to fail to give the instruction in question. *Graham* is to the same effect. In *Horrigan* it is said that it would be a ''constitutionally proportioned invasion'' of defendant's rights to give the instruction sua sponte. *Molano* says that it is error to give it over the defendant's objection. These cases are partly reconcilable if they are construed as holding that it is not error to follow the defendant's expressed desire with respect to the instruction. This still leaves unanswered the problem of what the court should do where the defendant expresses no desire, reserving to himself the right to complain on appeal of whatever the trial court does. —In *People* v. *Brown*, 253 Cal.App.2d 820, 830 [61 Cal.Rptr. 368] this division approved an instruction similar to CALJIC 51 re-revised.

*sell marijuana,* and unless such intent so exists that crime is not committed.'' (Italics added.)

With specific reference to count II the instruction was as follows: ''Every person who agrees, consents, or offers to unlawfully sell a narcotic to any person and then delivers instead a non-narcotic substance, or material, is guilty of a crime.''

These two instructions, read together, tell the jury in the plainest possible words that section 11503 is only violated if the defendant offers to sell a narcotic, in this instance marijuana, with the specific intent to sell marijuana.

As we will demonstrate there is some doubt from the heretofore decided cases whether a fraudulent intent to deliver a nonnarcotic substance is a necessary ingredient of section 11503. No case, however, holds that sincerity on the part of the defendant must be shown by the prosecution. In fact if defendant is sincere the mere offer violates either section 11501 or 11531, depending on whether the offer is to sell marijuana or some other narcotic. (*People* v. *Jackson,* 59 Cal.2d 468 [30 Cal.Rptr. 329, 381 P.2d 1]; *People* v. *Brown,* 55 Cal.2d 64, 68 [9 Cal.Rptr. 816, 357 P.2d 1072].)[3]

If it is the law that it is immaterial to a violation of section 11503 whether the defendant defrauded his customer, there can be no prejudice from the erroneous instruction because all that the court did was to add an element to the crime which the People were under no obligation to prove. If, on the other hand, it is an essential element of the crime that there be an intent to defraud, defendant was indeed prejudiced, because the jury would have found him guilty even if it believed that his intention was honest.

There are at least two decisions in which it is said that section 11503 demands an intent to defraud. In *People* v. *Lopez,* 213 Cal.App.2d 668, 675 [28 Cal.Rptr. 912] the defendant complained that the trial court did not instruct the jury that one of the elements of the offense was his knowledge of the nonnarcotic nature of the substance delivered. The court appeared to feel that an instruction to that effect was necessary, but found that such an instruction had, in effect,

---

[3]The possibility that the Legislature intended, by enacting section 11503, to exclude from the ambit of section 11501 the situation where a sincere offer is made but a nonnarcotic substance delivered was mentioned in *People* v. *Brown, supra,* page 68, but not decided. We feel that it is highly unlikely that the Legislature intended to reward the criminal by a lesser punishment if, after violating sections 11501 or 11531 by making a sincere offer, he delivers a nonnarcotic substance.

been given. In *People* v. *Contreras,* 226 Cal.App.2d 700, 702 [38 Cal.Rptr. 338] we find the following statement: "Under section 11503 of the Health and Safety Code, the law requires a showing of specific intent to furnish a substitute nonnarcotic for a narcotic."

On the other hand in *People* v. *Lewis,* 206 Cal.App.2d 82, 85 [23 Cal.Rptr. 495], we read: "A violation of section 11503 of the Health and Safety Code requires only that a defendant agree, consent or offer to unlawfully sell, furnish, . . . any narcotic, and then sell, deliver, furnish . . . any other substance or material in lieu of a narcotic."

More strongly, in *People* v. *Hicks,* 222 Cal.App.2d 265, 271-272 [35 Cal.Rptr. 149] we find: "It [section 11503] says, so far as applicable here, that every person who offers to sell a narcotic and delivers a nonnarcotic substance is guilty of a crime. *This is true, whether at the time of the offer the offeror actually intends to deliver a narcotic or intends only to deliver a nonnarcotic.*" (Italics added.)

These decisions, particularly *Contreras* and *Hicks* are irreconcilable.[4]

Several cases refer to a report to the Legislature, 1953 Regular Session, by the Assembly Interim Committee on Judiciary. (*People* v. *Jackson,* 59 Cal.2d 468, 471 [30 Cal. Rptr. 329, 381 P.2d 1] [dissent]; *People* v. *Brown, supra,* pp. 67-68; *People* v. *Shepard,* 169 Cal.App.2d 283, 287-288 [337 P.2d 214].) The reference in the report to the proposed legislation is as follows: "Section 11502 [now 11503] is added to the code and will be entirely new law. This will cover the individual who agrees to sell, furnish, transport, or give away any narcotic, and then delivers some other liquid, substance, or material. These individuals are known to be in a position to violate the law; but, for some reason, they may feel that they are dealing with a law enforcement officer and thus deliver tobacco, water, or some other substance with the result that they have had the intent to commit the crime but are testing out the officer. At the present time, nothing can be done to

---

[4]In *People* v. *Shephard,* 169 Cal.App.2d 283, 288-289 [337 P.2d 214], section 11503 survived a claim that it was unconstitutionally vague. The court held that "men of common intelligence do not have to guess at what it means." —Several other decisions in which the sufficiency of the evidence to convict of a violation of section 11503 was discussed, have no trouble at all finding the evidence to be sufficient without saying anything concerning defendant's intent. They are *People* v. *Red,* 186 Cal.App.2d 176 [8 Cal.Rptr. 726]; *People* v. *Dalton,* 172 Cal.App.2d 15 [341 P.2d 793]; *People* v. *Jackson,* 163 Cal.App.2d 355 [329 P.2d 329] and *People* v. *Wilson,* 162 Cal.App.2d 130 [328 P.2d 22].

that person, except to charge with with [*sic*] 'bunco.' Under this statute, it provides a penalty of not more than one year in the county jail or in the state prison for 10 years.''

It seems clear that the precise situation which the committee had in mind was one where the defendant was in a position to deliver a narcotic, presumably was sincere at the time he made his offer, but then changed his mind and delivered a nonnarcotic substance. The committee thought that in such a case the defendant could only be charged with ''bunco.'' The trouble is that the committee was wrong. *People* v. *Brown, supra,* firmly establishes that a sincere offer to sell a narcotic followed by no delivery at all is a violation of section 11501 and not merely an overture in a bunco scheme.

The committee report is therefore of little help. We turn to the decisions. The constitutionality of secton 11503 was discussed and established first in *People* v. *Shephard,* 169 Cal.App.2d 283 [337 P.2d 214] and then again in *People* v. *Hicks,* 222 Cal.App.2d 265 [35 Cal.Rptr. 149]. In *Shephard* the court said: ''In any event, without the assistance of the interim committee report, it is apparent that the Legislature had the intention of discouraging anyone from engaging or appearing to engage in the narcotics traffic. Anything which gives sustenance, solace, comfort or encouragement in the selling of narcotics or in the agreeing to sell narcotics, can be condemned, and properly so, by the Legislature. It is clear that the statute in question was aimed at discouraging any traffic in narcotics and is therefore within the police power of the state.'' (*Ibid.,* p. 288.) This statement was quoted with approval in *Hicks.* (*Ibid.,* p. 271.) The vice which the statute attacks is one aspect of the narcotics traffic, not fraud or breach of contract. Indeed it appears to be quite unnecessary to a conviction under section 11503 that the victim gives or promises any consideration for the nonnarcotic substance received. Leaving out alternative ways of violating the section it reads as follows: ''Every person who agrees . . . to unlawfully . . . give any narcotic to any person . . . and then . . . gives . . . to any person any other liquid, substance, or material in lieu of any narcotic shall be punished . . .''[5]

---

[5]The more extreme applications of the section as thus exposed may possibly be subject to the constitutional objections with which the court, in *People* v. *Hicks, supra,* did not have to deal because there the defendant had no standing to urge them. We merely draw attention to the fact that the Legislature did not confine section 11503 to contractual situations.

We therefore hold that it is immaterial to a violation of section 11503 whether the defendant either before or at the time of the delivery of the nonnarcotic substance, intends to deliver a narcotic or some innocuous material. The section is violated if there is an offer of a narcotic and a subsequent delivery of a nonnarcotic substance. Defendant therefore suffered no disadvantage when the court imposed the additional requirement of an intent to furnish a narcotic or when it failed to instruct that a fraudulent intent was necessary.

The judgment is affirmed.

Hufstedler, J., and Stephens, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 11, 1968.