[Crim. No. 20822. July 19, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
LARRY DAVID McDANIEL,
Defendant and Appellant.

**COUNSEL**

Paul Halvonik and Quin Denvir, under appointment by the Court of Appeal, State Public Defenders, Gary S. Goodpaster and Ezra Hendon, Chief Assistant State Public Defenders, Mark L. Christiansen and Richard G. Fathy, Deputy State Public Defenders, for Defendant and Appellant.

Evelle J. Younger and George Deukmejian, Attorneys General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant

Attorney General, Robert D. Marshall, Marjory Winston Parker and James T. McNally, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

CLARK, J.—Defendant was convicted of violation of Health and Safety Code section 11355.[1] The judgment must be reversed.

Defendant contends the trial court erred in instructing the jury that one violates section 11355 if he offers to sell a controlled substance and then *offers to deliver* another substance in lieu thereof. The case law, defendant asserts, requires *actual delivery* of the substitute. This contention lacks merit. The statute expressly provides that the crime defined by it is committed by one who offers to sell a controlled substance "and then . . . offers . . . to have . . . delivered" any other substance.[2] The cases interpreting the statute, as we shall explain, do not hold otherwise.

However, there is merit in defendant's alternative contention that in the circumstances alleged here violation of section 11355 is not a general intent crime. When the alleged violation consists of an offer to sell a controlled substance and an offer to deliver another substance, the jury should be instructed that the latter offer must be made with the specific intent of delivering the substitute. (See *People* v. *Daniels* (1975) 14 Cal.3d 857 [122 Cal.Rptr. 872, 537 P.2d 1232]; *People* v. *Brown* (1960) 55 Cal.2d 64 [9 Cal.Rptr. 816, 357 P.2d 1072].) Because the jury here was not properly instructed on this critical issue, the judgment must be reversed.

---

[1]Section 11355 provides: "Every person who agrees, consents, or in any manner offers to unlawfully sell, furnish, transport, administer, or give (1) any controlled substance specified in subdivision (b) or (c) of Section 11054, specified in paragraph (10), (11), (12), or (17) of subdivision (d) of Section 11054, or specified in subdivision (b) or (c) of Section 11055 or, (2) any controlled substance classified in Schedule III, IV, or V which is a narcotic drug to any person, or offers, arranges, or negotiates to have any such controlled substance unlawfully sold, delivered, transported, furnished, administered, or given to any person and then sells, delivers, furnishes, transports, administers, or gives, or offers, arranges, or negotiates to have sold, delivered, transported, furnished, administered, or given to any person any other liquid, substance or material in lieu of any such controlled substance shall be punished by imprisonment in the county jail for not more than one year, or in the state prison."

All statutory references will be to the Health and Safety Code unless otherwise indicated.

[2]See footnote 1, *ante.*

## FACTS

While driving an unmarked car one evening two undercover narcotics officers were asked by the driver of a passing car whether they wanted to buy some "acid." Officer Willey replied affirmatively and asked the price. Because the cars were moving and the four occupants of the passing vehicle were all talking at once, the response was not clearly understood. However, "$25" and "$2 a 'hit' " were mentioned. Directing the driver of the other car to follow him, Willey drove into an alley, parked, and approached the other car on foot.

Defendant's fellow passengers advised Willey he would be doing business with defendant. Willey asked defendant how much he wanted for a "hit" and was told $2. When Willey insisted on seeing what was being offered for sale, defendant walked to a lighted area where he showed Willey a clear plastic bag containing approximately 10 slips of yellow paper with blue dots, which Willey recognized as a common method of packaging LSD. After again determining the price was $2 a "hit," Willey identified himself as a police officer and advised defendant he was under arrest.

While Willey struggled with defendant in an attempt to wrest the plastic bag from him, defendant moved the bag toward his face. After subduing defendant, Willey secured the bag and discovered there was no longer anything in it. He searched the area but failed to find the contents of the bag.

Subsequently, Pat Macardican, one of defendant's companions, gave Willey a cigarette box containing 126 slips of paper similar to those defendant had exhibited. It was stipulated at trial that if a criminalist for the Department of Justice were called, he would testify the dots on the slips of paper given to Willey by Macardican did not contain LSD.

Obtaining a waiver of *Miranda*[3] rights, Willey asked defendant what had happened to the slips of paper defendant had exhibited. Defendant refused to answer, but said the substance Willey had received from Macardican was "bunk," and that the police did not "have him on anything."

Testifying in his own behalf, defendant admitted offering to sell LSD to Willey, but denied showing him slips of paper or making the statement

[3]*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

concerning "bunk." Defendant claimed he had not had anything—either LSD or "bunk"—to deliver. His scheme, he testified, was simply to "rip off" would-be customers by obtaining money without leaving his car and then driving away without making a delivery. He concluded by claiming he was being "framed" by the police.

A motion for judgment of acquittal under Penal Code section 1118.1 was timely made based on the absence, conceded by the People, of evidence of delivery. The court denied the motion with the following observation: "I would want to point out that the central issue appears to be whether or not there must be a delivery. We have had an opportunity to look at the books. It would appear to me that a delivery in fact is not necessary, but under the status of the evidence at the present time, the jury could believe beyond a reasonable doubt that after an offer to [sell] LSD was made, that there was a subsequent offer to deliver a substance in lieu of a controlled substance, and I want to spell that out, because if I'm in error, then the defendant would have a good record upon which to appeal."

Consistent with this ruling, the judge instructed the jury: "Every person who agrees, consents, or offers to unlawfully sell, furnish, administer, or give away any controlled substance, and then offers to deliver, furnish, administer, or give away any other substance in lieu of a controlled substance is guilty of a crime."

I

We first consider defendant's contention that cases interpreting section 11355 have engrafted a delivery requirement onto the statute. Four cases bear examination regarding this contention: *People* v. *Shephard* (1959) 169 Cal.App.2d 283 [337 P.2d 214]; *People* v. *Brown* (1960) 55 Cal.2d 64 [9 Cal.Rptr. 816, 357 P.2d 1072]; *People* v. *Hicks* (1963) 222 Cal.App.2d 265 [35 Cal.Rptr. 149]; and *People* v. *Ernst* (1975) 48 Cal.App.3d 785 [121 Cal.Rptr. 857]. In none of these cases did the court hold—on facts showing no delivery of a substance in lieu of the proffered controlled substance—delivery of a substitute was a necessary element of the crime.

*Shephard* involved a conviction under the predecessor of section 11355—former section 11502.[4] The defendant, who had offered to sell

---

[4]Section 11502 provided: "Every person who agrees, consents, or in any manner offers to unlawfully sell, furnish, transport, administer, or give any narcotic to any person, or

heroin and had actually delivered a nonnarcotic substance, contended section 11502 was unconstitutionally vague. In that context the Court of Appeal held the statute was not vague, gave fair notice, and made it "a crime for a person to agree to sell a narcotic to someone, and then to deliver instead a non-narcotic substance." (169 Cal.App.2d at p. 289.)

The Court of Appeal considered and quoted from a progress report by the Subcommittee on Narcotics of the Assembly Interim Committee on Judiciary explaining that section 11502 " 'will be entirely new law. This will cover the individual who agrees to sell, furnish, transport, or give away any narcotic, and then delivers some other liquid, substance, or material. These individuals are known to be in a position to violate the law; but, for some reason, they may feel that they are dealing with a law enforcement officer and thus deliver tobacco, water, or some other substance with the result that they have had the intent to commit the crime but are testing out the officer. At the present time, nothing can be done to that person, except to charge with with [*sic*] "bunco." ' " (169 Cal.App.2d at pp. 287-288.)

As the language of the proposed statute was substantially identical to that of section 11502 as enacted (Assem. Bill No. 2238 (1953 Reg. Sess.) § 2, as amended 2 Apr. 1953), the subcommittee's description of the proposed legislation was obviously not intended to exhaustively restate its provisions, but rather to highlight the most common behavior at which it was directed. Similarly, given the context of its ruling—a defendant who had offered to sell a narcotic, had delivered a nonnarcotic, and was challenging the statute as unconstitutionally vague—the Court of Appeal in *Shephard* obviously had no occasion to determine whether delivery was a necessary element of the crime, and merely held that the statute clearly prohibited offering to sell a narcotic and then delivering a nonnarcotic. In light of the many other acts prohibited by the statute, it would be unreasonable to read *Shephard* as holding that none of the other proscribed conduct violated the statute.

---

offers, arranges, or negotiates to have any narcotic unlawfully sold, delivered, transported, furnished, administered, or given to any person and then sells, delivers, furnishes, transports, administers, or gives, or offers, arranges, or negotiates to have sold, delivered, transported, furnished, administered, or given to any person any other liquid, substance, or material in lieu of any narcotic shall be punished by imprisonment in the county jail for not more than one year, or in the state prison for not more than 10 years." (Added by Stats. 1953, ch. 1770, § 2, and repealed by Stats. 1959, ch. 1112, § 1.)

In 1959 section 11502 was renumbered as section 11503. (Stats. 1959, ch. 1112, §§ 1, 6.) The defendant in *People* v. *Brown, supra,* 55 Cal.2d 64 was convicted of offering to sell narcotics in violation of former section 11501 (now § 11352). He contended section 11501 did not encompass his conduct, which consisted in offering to sell an undercover agent narcotics, taking the agent's money, and then failing to deliver anything. He contended that a specific intent to sell narcotics was an essential element of the crime defined by section 11501, and that this intent could not be inferred from the offer alone.

This court agreed, after considering the same Assembly subcommittee report discussed above, and the proposed legislation it explained. This court noted that two new sections were proposed, stating in this context: "Section 11503 makes it a crime to offer to sell a narcotic and then deliver a substitute. Proposed section 11509 (§ 10 of Assem. Bill No. 2243, 1953 Reg. Sess.) would have made it a crime to offer to sell a narcotic coupled with the acceptance of money, even though there was no delivery of anything." (55 Cal.2d at p. 67, fns. omitted.)[5] In light of the subcommittee's description of the coverage of proposed sections 11503 and 11509, it was concluded the subcommittee had made clear that section 11501, a part of the same legislative package, did not encompass an offer to sell a narcotic with subsequent delivery of a substitute, and "[a] *fortiori* it would not encompass an offer to sell a narcotic and subsequent failure to deliver anything, which proposed section 11509 envisaged." (55 Cal.2d at p. 68.)

Taken in context, this court's statement in *Brown* that former section 11503 "makes it a crime to sell a narcotic and then deliver a substitute" was clearly not intended to imply that delivery of a substitute was a necessary element of the crime.

In *People* v. *Hicks, supra,* 222 Cal.App.2d 265, the defendant, having negotiated to sell an undercover agent marijuana, told the officer a brown paper bag he would place in a doorway contained the "stuff," and instructed the officer to pick it up and then pay him. The officer followed directions, but the contents of the bag turned out not to be marijuana. Rejecting the contention that former section 11503 was unconstitutionally vague, the Court of Appeal held *Shephard* and its reliance on the subcommittee report controlling. On evidence showing actual delivery of a substitute, as in *Shephard,* the Court of Appeal in *Hicks* stated that section 11503 "says, *so far as applicable here,* that every person who offers to sell a narcotic and delivers a nonnarcotic substance is guilty of a crime.

---

[5]Proposed section 11509 was not enacted.

This is true, whether at the time of the offer the offeror actually intends to deliver a narcotic or intends only to deliver a nonnarcotic. It is the delivery of a nonnarcotic that completes the crime." (222 Cal.App.2d at pp. 271-272; italics added.)

The factual context of this statement and the italicized qualification combined to make clear the *Hicks* court was not holding that delivery of a substitute was an essential element of the crime.

In *People* v. *Ernst, supra,* 48 Cal.App.3d 785, undercover agents, after prolonged negotiations for the purchase of cocaine, went to the home of one of the defendants and were shown a substance represented to be cocaine. Shortly after an agent accepted a defendant's invitation to sample the substance, other agents arrived, arrested the defendants and seized the substance, which was not cocaine. The trial court set aside the information charging the defendants with violation of section 11355 on the ground there "was no delivery, and, therefore, a necessary element of 11355 is missing." On appeal by the People, the Court of Appeal reversed.

"The offense defined by section 11355 consists," the Court of Appeal stated, "of two elements: first, a 'deal' to supply a controlled substance, and, second, some activity with respect to 'any other liquid, substance, or material' in apparent consummation. Although semantically there are precisely 24 ways of satisfying the second element of the statute—e.g., 'negotiating to have delivered'—defendants' position, obviously concurred in by the trial court, is that whatever the statute says, judicial interpretation has made an actual delivery of a noncontrolled substance essential." (48 Cal.App.3d at p. 790.) "Judicial pronouncements in apparent support of that proposition are not lacking," the Court of Appeal observed, mentioning *Shephard* and *Hicks* among other cases. (*Id.*)

The Court of Appeal in *Ernst* did not seek to resolve the question whether delivery of another substance is an essential element of the crime. Rather, assuming for the sake of argument that delivery is required, the Court of Appeal held the requirement was satisfied there. "We merely hold that in view of the purpose of the act and the particular circumstances of this case—the apparent tender of the narcotic for which the parties had negotiated and the accepted invitation to sample an amount sufficient to satisfy the buyer—there was an adequate delivery to

require defendants to plead to the information." (48 Cal.App.3d at p. 792.)

In conclusion, delivery of a substance other than the particular controlled substance proffered for sale has never been held to be a necessary element of the crime defined by section 11355.[6]

## II

We now turn to the general/specific intent question. When a charge of violating section 11355 rests on evidence of an offer to sell a controlled substance and an offer to deliver a substitute, must the jury be instructed that the latter offer must be made with specific intent of delivering a substitute? An affirmative answer to this question is dictated by our prior decisions in *People* v. *Daniels, supra,* 14 Cal.3d 857 and *People* v. *Brown, supra,* 55 Cal.2d 64.

The question presented in *Daniels* was whether sale of a restricted dangerous drug (former § 11912, now § 11352) is a crime requiring a general or specific intent. In analyzing this question we reiterated an important "temporal difference" between the two sorts of criminal intent. " 'When the definition of a crime consists of only the description of a particular act, without reference to intent to do a further act or achieve a future consequence, we ask whether the defendant intended to do the proscribed act. This intention is deemed to be a general criminal intent. When the definition refers to defendant's intent to do some further act or achieve some additional consequence, the crime is deemed to be one of specific intent.' " (14 Cal.3d at p. 860, quoting *People* v. *Hood* (1969) 1 Cal.3d 444, 456-457 [82 Cal.Rptr. 618, 462 P.2d 370].)

"It is apparent," we pointed out in *Daniels,* that "the defense defined in former section 11912 does not expressly require an intent 'to do a further act or achieve a future consequence' [citing *Hood*]. Further, it does not appear that such an intent is implicit in that section as a prerequisite to a conviction of that crime in cases where, as here, the alleged sale consists of the simultaneous transfer of a restricted dangerous drug to another for cash." (14 Cal.3d at pp. 860-861.) Accordingly, we held that "selling a restricted dangerous drug (in the sense of transferring it to another for

---

[6]We therefore need not address defendant's ex post facto argument, for it assumes that prior cases have added a delivery requirement to the statute, and then argues that it would be a violation of the ex post facto prohibition not to interpret the statute in a similar fashion here.

cash) is a general and not a specific intent crime." (*Id.,* at p. 861.) "Neither *People* v. *Jackson* (1963) 59 Cal.2d 468, 469-470 [30 Cal.Rptr. 329, 381 P.2d 1] nor *People* v. *Brown* (1960) 55 Cal.2d 64, 68 [9 Cal.Rptr. 816, 357 P.2d 1072]," we continued, "is contrary to our conclusion herein. Both cases involved charges of *offers* to sell narcotics in contradistinction to the instant charge of *sale* of restricted dangerous drugs. In an offer to sell a narcotic, the proscribed act is the making of the offer. An accompanying intent to do a further act, i.e., to sell, is inherent, making the offense a specific intent crime." (14 Cal.3d at p. 861.)

By parity of reasoning, on the evidence presented here a specific intent to deliver a substance other than the particular controlled substance proffered for sale is required for violation of section 11355. *People* v. *Lechlinski* (1976) 60 Cal.App.3d 766 [131 Cal.Rptr. 701] and *People* v. *Haines* (1975) 53 Cal.App.3d 496 [125 Cal.Rptr. 735] are not inconsistent with this conclusion. *Lechlinski* presented the question whether on the facts there presented section 11355 required a specific intent to deliver a substitute. *Haines* presented essentially the same question with regard to the parallel statute dealing with restricted dangerous drugs. (§ 11382.) In each case the Court of Appeal resolved the question in the negative on facts showing an offer to sell a controlled or restricted substance. and *delivery* of a substitute.

In the circumstances of this case the trial court had a duty to instruct the jury, *sua sponte,* that defendant was not guilty of violating section 11355 unless he had a specific intent to deliver a substance other than the controlled substance offered for sale. (See *People* v. *Sedeno* (1974) 10 Cal.3d 703 [112 Cal.Rptr. 1, 518 P.2d 913].) As the question of defendant's intent was the crux of the case, defendant having admitted the other elements of the crime, the failure to so instruct the jury compels reversal. (Cal. Const., art. VI, § 13.)

The judgment is reversed.

Bird, C. J., Tobriner, J., Mosk, J., Richardson, J., Manuel, J., and Newman, J., concurred.