960 F.2d 153
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Bernard Brian BEARD, Defendant-Appellant.
 No. 91-50259.
 United States Court of Appeals, Ninth Circuit.
 Submitted Jan. 8, 1992.*
Decided April 20, 1992.
 
 Before FARRIS, NOONAN and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 FACTS
 
 2
 Bernard Beard was arrested and charged with conspiracy and possessing cocaine with the intent to distribute in violation of federal law. Beard was released on a $15,000.00 appearance bond with a cash deposit of $1,000.00 and an affidavit of surety signed by his mother. As one of the conditions of his release, Beard was required to obey all federal, state and local laws.
 
 
 3
 Between September 18 and 20, 1990, while released on bond, Beard negotiated with agents of the Drug Enforcement Administration ("DEA") for a sale of 10 kilograms of cocaine at a price of $23,000.00 per kilogram. On September 20, 1990, DEA agents arrested Beard at the time and place appointed for the delivery of the cocaine. The car in which Beard and two accomplices were arrested contained a loaded handgun and a gym bag filled with newspaper, not cocaine. No drugs were found. Both federal and state prosecutors declined to bring charges.
 
 
 4
 On September 21, 1991, the government filed an application for reconsideration of the order setting conditions on Beard's release. To support its application, the government submitted the affidavit of DEA Special Agent Stephen G. Azzam, detailing the circumstances of Beard's arrest the day before. Finding that Beard had violated the terms and conditions of his release, the district court revoked his bond and remanded him to the custody of the United State's Marshal's Service for trial. On January 22, 1991, Beard was acquitted of both charges in a jury trial.
 
 
 5
 On February 22, 1991, the district court issued a minute order directing all parties to file memoranda of law why the cash deposit should not be forfeited. On March 6, 1991, the government filed its motion for forfeiture of bail posted. On April 8, 1991, the district court filed its order forfeiting Beard's $1,000.00 cash deposit. Beard filed a timely appeal of that order.
 
 ANALYSIS
 
 6
 A. Bail Bond Forfeiture Under Fed.R.Crim.P. 46(e).
 
 
 7
 The district court forfeited Beard's bail bond for violating a state law. Beard argues that under the Bail Reform Act of 1984, 18 U.S.C. § 3141 et seq., only bailjumping triggers the forfeiture of a bail bond. This is true, but largely irrelevant: bail forfeitures are governed by Fed.R.Crim.P. 46(e). That Rule provides: "If there is a breach of condition of a bond, the district court shall declare a forfeiture of the bail." The language of 46(e) is mandatory. See United States v. Abernathy, 757 F.2d 1012, 1015 (9th Cir.1985); United States v. Frias-Ramirez, 670 F.2d 849, 851 (9th Cir.1982).[1]
 
 
 8
 The Bail Reform Act of 1984 ("the Act") authorizes bail forfeiture only for a defendant's failure to appear. See 18 U.S.C. § 3146(d). But Rule 46(e) is not so limited: it provides for bail forfeiture for the breach of any condition of a bail bond. Under Rule 46(e), the court in United States v. Stanley upheld a forfeiture based solely on the defendant's breach of his bond's travel restrictions. 601 F.2d 380 (9th Cir.1979). Similarly, in Brown v. United States, the Fifth Circuit upheld the district court's power under Rule 46 to declare a forfeiture for breach of travel restrictions. 410 F.2d 212 (1969).
 
 
 9
 Beard tries to distinguish Stanley and Brown by noting that they were handed down before the Act became effective. He contends that the Act supersedes Rule 46(e). Such questions of statutory construction are reviewed de novo. United States v. Doremus, 888 F.2d 630, 631 (9th Cir.1989). The district court found that the Act does not supersede Rule 46(e): the two "do not conflict"; they "supplement each other". The only other federal court to address this exact question also found that "the Bail Reform Act [of 1984] was never intended to supplant remedies available pursuant to Rule 46." U.S. v. Vaccaro, 719 F.Supp. 1510, 1513 (D.Nev.1989). Stanley and Brown read the predecessors to the Act and Rule 46(e) the same way: the Act and the Rule are "complementary" and together "form a unified system for dealing with pretrial release." Brown, 410 F.2d at 216.
 
 
 10
 Beard nonetheless argues that Rule 46(e) conflicts with section 3148(a) of the Act. But as both the government and the district court point out, section 3148(a) and Rule 46(e) have different objects of concern. A late addition to federal bail law, section 3148 is addressed to the revocation--not the forfeiture--of a bond. Accordingly, section 3148(a) is concerned with the person of the defendant: he may personally suffer a revocation of his release and the imposition of a detention order and prosecution for contempt. See 18 U.S.C. 3148(a) ("A person who has been released [on bail] is subject to a revocation of release, an order of detention, and a prosecution for contempt of court.") (emphasis added).
 
 
 11
 Rule 46(e), however, is concerned with the posted bail. That res may be forfeited "if there is a breach of condition of a bond". What a court can do to a defendant and what it can do to a bail bond are quite different matters. This distinction is especially important for bail bonds, which are often posted by a surety and not by the defendant himself. Quite simply, section 3148(a) has nothing to do with the forfeiture of a bail bond. See United States v. Dunn, 781 F.2d 447, 449-450 (5th Cir.1986).
 
 
 12
 Beard also argues that section 3146(d) of the Act conflicts with Rule 46(e). Section 3146 codifies the criminal offense of bailjumping. See Senate Report No. 225, 98th Cong., 2d Sess., reprinted in 1984 U.S.C.C.A.N. 3182, 3213 ("Senate Report").[2] Section 3146(d) "simply emphasizes" that a court may order forfeiture of a bond for bailjumping and "makes it clear that such forfeiture may be ordered irrespective of whether the person has been charged with the offense of bailjumping under section 3146." Senate Report at 3217. The plain reading of this section is that it underscores a power the court already has: the power to forfeit a bond for any violation of its conditions. There is not even a statutory hint that section 3146(d) was meant to limit the kind of conditions that might trigger a forfeiture. "[B]ail forfeiture and criminal liability are complementary penalties triggered by the same predicate act. This does not mean that the imposition of one sanction precludes the imposition of the other ..." United States v. Castaldo, 636 F.2d 1169, 1171 (9th Cir.1980) (construing section 3150 of the Bail Reform Act of 1966 and Rule 46(e)).
 
 
 13
 If accepted, Beard's argument would produce a decidedly odd result: a bail bond posted on certain conditions would be immune from forfeiture for the violation of those conditions. As the district court said, this would be "nonsensical". Construing the Act and Rule 46(e) as complementary penalties avoids this absurdity. "When two statutes are capable of coexistence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." Morton v. Mancari, 417 U.S. 535, 551 (1974). The Bail Reform Act of 1984 does not supersede Rule 46(e). A bail bond must be forfeited under Rule 46(e) for the violation of any of the bond's conditions of release.
 
 
 14
 B. The Forfeiture of Beard's Bail Bond.
 
 
 15
 The district court found that Beard's bond should be forfeited for three different violations of the conditions of his release: the constructive possession of a firearm; the violation of California Health and Safety Code § 11382; the violation of California Health and Safety Code § 11355. A district court's decision granting government forfeiture of a bond is reviewed for abuse of discretion. United States v. Abernathy, 757 F.2d 1012, 1015 (9th Cir.1985). The government concedes that the first two grounds are inadequate to support the forfeiture.[3]
 
 
 16
 Under the Act, all pre-trial releases are subject to the condition that the defendant "not commit a Federal, State or local crime during the period of release". 18 U.S.C. § 3142(c)(1). The government bases its forfeiture solely on Beard's violation of section 11355. Health and Safety Code section 11355 provides in relevant part:
 
 
 17
 every person ... who offers, arranges, or negotiates to have [inter alia, a Schedule II controlled substance] unlawfully sold, delivered, transported, furnished, administered, or given to any person and who then sells, delivers, furnishes, transports, administers, or gives, or offers, arranges, or negotiates to have sold, delivered, transported, furnished, administered, or given to any person any other liquid, substance, or material in lieu of such controlled substance shall be punished by imprisonment for not more than one year in the county jail, or in state prison.
 
 
 18
 The government alleges that Beard offered, arranged and negotiated to have cocaine sold to its undercover DEA agents and then arranged to have a substitute sold instead. Although an exotic substitute for cocaine, a gym bag full of newspapers is certainly "any other liquid, substance, or material" within the meaning of the statute. The Azzam affidavit fully supports the government's allegations and Beard does not challenge its truth.
 
 
 19
 Beard makes a legal argument instead. He claims that section 11355 "can only be violated where there is an offer of a narcotic and a subsequent delivery of a non-narcotic substance". (citing People v. House, 74 Cal.Rptr. 496 (1969)). From this legal premise, Beard argues that he "made no delivery of a non-narcotic substance" and thus "there was no violation of the statute".
 
 
 20
 This argument is a gross misstatement of the law. As authoritatively construed by the California Supreme Court, section 11355 does not require delivery of a non-narcotic substance. "[D]elivery of a substance other than the particular controlled substance proffered for sale has never been held to be a necessary element of the crime defined by section 11355." People v. McDaniel, 24 Cal.3d 661, 669 (1979). It borders on sanctionable conduct to cite House for a proposition the California Supreme Court has specifically rejected.
 
 
 21
 Beard also argues that a violation of section 11355 requires that the defendant have "the specific intent ... to make a drug sale". Again, this is a gross misstatement of the law. A violation of section 11355 requires that the defendant have "a specific intent to deliver a substance other than the particular controlled substance proffered for sale". McDaniel, 24 Cal.3d at 670. The uncontested Azzam affidavit provides ample evidence for the conclusion that Beard had the specific intent of delivering the gym bag full of newspapers to the DEA agents. The district court did not abuse its discretion in finding that Beard violated section 11355.
 
 
 22
 The district court's forfeiture order is AFFIRMED.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to Fed.R.App.P. 34(a) and Ninth Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3
 
 
 [1]
 Rule 46(e)(2) allows a district court to set aside all or part of a forfeiture "if it ... appears that justice does not require the forfeiture." The district court specifically found that justice did not require the court to set aside or reduce the forfeiture. Beard does not challenge that finding
 
 
 [2]
 Section 3146 is simply a continuation of its predecessor, section 3150 of the old Bail Reform Act of 1966. The language of the two is not materially different
 
 
 [3]
 As the government points out, both the district court and Beard wrongly assumed that Beard was prohibited from possessing a firearm as a condition of his pre-trial release. In fact, he was not. Furthermore, section 11382 involves only narcotic drugs classified in Schedule III, IV or V. The only drug the government alleges Beard attempted to sell is cocaine, a Schedule II drug. See Cal.H & S Code § 11055(b)(14)