Filed 11/19/20  P. v. Figueroa CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>GARY FIGUEROA,<br><br>    Defendant and Appellant. | G058368<br><br>(Super. Ct. No. 15CF0843)<br><br>ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING; NO CHANGE IN JUDGMENT |

It is ordered that the opinion filed herein on November 5, 2020, be modified as follows:

1.  On page 2, delete the third sentence in the second paragraph, beginning "The trial court sentenced Figueroa," and replace it with the following new sentence:

The trial court sentenced Figueroa to the aggravated term of eight years on count 6, hostage taking in violation of section 210.5, and imposed a consecutive four-year term on the firearm use enhancement (§ 12022.5, subd. (a)) attached to that count.

2.  On pages 5 and 6, delete the fourth sentence in the fifth paragraph, beginning "Figueroa did not appear," and replace it with the following new sentence:

Figueroa did not appear to be under the influence of any drug or alcohol at the time of the interrogation, and he was not slurring his words.

This modification does not effect a change in the judgment.

The petition for rehearing is DENIED.


THOMPSON, J.

WE CONCUR:


ARONSON, ACTING P. J.


GOETHALS, J.

Filed 11/05/20  P. v. Figueroa CA4/3 (unmodified opinion)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>GARY FIGUEROA,<br><br>    Defendant and Appellant. | G058368<br><br>(Super. Ct. No. 15CF0843)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Michael Cassidy, Judge.  Affirmed as modified and remanded for further proceedings.

Sally Patrone Brajevich, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Deputy Attorney General, Julie L. Garland, Assistant Attorney General, Michael Pulos and Seth M. Friedman, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Gary Figueroa was charged in a first amended information with three counts of attempted murder (Pen. Code, §§ 664, subd. (a), 187, subd. (a); all undesignated statutory references are to the Penal Code). A police officer, a deputy probation officer, and Benny Thompson were the alleged victims. Each attempted murder was alleged to have been deliberate and premeditated. Additionally, Figueroa was alleged to have personally discharged a firearm (§ 12022.53, subd. (c)) in the commission of each attempted murder. Figueroa was also charged with shooting at an occupied motor vehicle and shooting an occupied dwelling (§ 246), three counts of taking a hostage (§ 210.5), and one count of aggravated assault (§ 245, subd. (a)(1)). All the offenses were alleged to have been committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)) and it was alleged Figueroa used a firearm (§ 12022.5, subd. (a)) during the commission of the taking a hostage charges.

The aggravated assault was dismissed midtrial. The jury acquitted Figueroa of each attempted murder charge, found the gang enhancements not true, convicted him of each of the remaining offenses, and found true the firearm use enhancements alleged in connection with the hostage taking counts. The trial court sentenced Figueroa to the aggravated term of eight years on count 6, hostage taking in violation of section 210.5, and imposed a consecutive six-year term on the firearm use enhancement (§ 12022.5, subd. (a)) attached to that count. The court also imposed consecutive one-third the midterm sentences of one year and eight months on both of the convictions for shooting at an occupied motor vehicle and shooting at an inhabited dwelling and shooting at an occupied motor vehicle (counts 4 & 5, respectively), for a total commitment of 15 years and four months.

Figueroa argues on appeal the trial court erred in not ordering material to be disclosed to him pursuant to *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*); the prosecutor committed misconduct during argument to the jury; and the fees imposed in the abstract of judgment, but not orally imposed by the court, must be stricken.

2

We reviewed the record created during the in camera portion of the *Pitchess* motions, including the flash drive submitted by the Tustin Police Department custodian of records and conclude the trial court did not abuse its discretion. We reject Figueroa's prosecutorial misconduct arguments, but agree the fees listed in the abstract of judgment (§ 1465.8; Gov. Code, § 70373) must be stricken because they were not imposed by the court at the time of pronouncing judgment. However, because such fees are mandatory, we will remand the matter to the trial court to impose said fees. The judgment will otherwise be affirmed.

## FACTS[1]

In the evening on April 17, 2015, Benny Thompson was at his home in Tustin, California. As he returned to the front of the apartment from his garage, he saw two men sitting on the stairs and "a boy" (Figueroa) conversing with one of them. Figueroa was outside the fence in the front of the apartment. As Thompson approached, he heard Figueroa ask of the men, "Where you from," as Figueroa walked away from them. Thompson continued walking toward the front of the apartment and Figueroa went back to Thompson's location and asked him what he wanted. Thompson heard Figueroa say something to the effect of, "this is Los Wickeds territory." Thompson responded, "No, it's not. It is Tustin PD territory." Thompson asked Figueroa his name, and the he answered, "Junior, Los Wickeds." After that, Figueroa walked away. He never threatened Thompson or displayed a gun.

After Figueroa left, Thompson went inside his apartment and told his wife what had just happened. After telling his wife, Thompson went back outside to the front of his apartment, to see if Figueroa was going to return. Within five minutes, Thompson saw a Tustin Police Department gang unit car drive by. It turned into an alley.

---

[1] Due to the nature of the issues presented, a truncated version of the facts suffices.

3

Thompson ran after it and waived it down. The police car backed up to Thompson and stopped. According to Thompson, half of the car was in the alleyway.

There were two people in the police car. Thompson spoke with Tustin Police Officer Diego Gomez through the front passenger window. He began to tell the officer about his contact with Figueroa when he heard two shots fired. Gomez immediately pulled the police car further into the alley. Thompson turned around and saw muzzle flashes from at least two more shots. Thompson said he was unable to see the shooter because it was dark, but stated the muzzle flash was pointed in his direction. Thompson believes the shooter was the same boy he saw earlier.

Deputy probation officer Arturo Lopez, was riding in the front passenger seat of the gang unit police car. He did not see any muzzle flashes and did not hear any bullet strike the car or nearby buildings. Gomez, the driver of the police car, did not see the shooter either. Bullets were found to have struck a patio fence, roof trim, and a wall in the alleyway.

Nearby, Jennifer Venegas was in her apartment with two friends. The front door was open. A male, later identified as Figueroa, entered. Venegas said he looked like a gangster and had gang tattoos. Figueroa had a gun and told them, "I just shot a cop and I don't want to keep you guys here, but you guys can't leave." He took off his sweater and placed it on a table by the television. He put the gun on top of the sweater.

Figueroa looked very disoriented. Venegas said he appeared to be "coming in and out of like consciousness type of thing." She told him he could not stay there because her son could be returning any time. Figueroa said he had a daughter and that he could not leave because he had just shot "a cop."

While he was in the apartment, Figueroa made phone calls in an attempt to get someone to come pick him up. He told people on the phone that he had just killed a cop. Venegas could see he was frantic.

4

Venegas saw police officers in the area, as well as a police helicopter. She said Figueroa knew the police were looking for him. Police were searching near Venegas's apartment and Venegas attempted to flag down a police officer through her open door. The officer did not see her. When it appeared as if the police were confirming with each other that the suspect was not located, Venegas yelled out, "No!" Figueroa asked what she was doing, and she said she was trying to tell a pizza delivery person that nobody was there. Figueroa grabbed his gun and pointed it at Venegas.

Venegas lied to Figueroa, telling him her father was returning with her son. She asked if he would be all right with her son there. Figueroa said he would never hurt a child. She said, "Ok," and ran out the door. She spotted a police vehicle and flagged it down. Venegas's friends left the apartment a couple of minutes later.

The police had set up a containment in the area. They were told a man with a shaved head had been observed running through a nearby apartment complex. Then Venegas told Gomez there was a man with a gun in her apartment, along with two of her friends. She described the intruder as a male with a shaved head and wearing a gray sweatshirt.

Officer David Welde took up a position about 50 feet from Venegas's apartment. From his vantage point he could see the front door of the apartment as well as a sliding glass door and an open porch. He could see Figueroa in the apartment through the sliding glass door. A few of the times Welde saw him, Figueroa was holding a kitchen knife in his right hand. Welde heard Figueroa yell out "Wickeds" and that he was going to kill himself. Welde was present when Figueroa surrendered.

Figueroa was advised of his *Miranda*[2] rights at the police station and spoke to the police. He spoke about being in the apartment that night. He denied having smoked methamphetamine, but said he had drunk alcohol. Figueroa did not appear to be

---

[2] *Miranda v. Arizona* (1966) 384 U.S. 436.

under the influence. He did not appear to take the interrogation seriously. He denied involvement in the shooting, and possessing a firearm, although he asked if any officers were hit. When asked about the incident in Venegas's apartment, Figueroa said he had been invited into the apartment and he was just hanging out with a girl he dated.

The police searched Venegas's apartment. Inside the freezer in the apartment, police found a revolver in a bag of pizza rolls. The revolver had five empty shells in its cylinder. The refrigerator had a knife "stabbed into it." The parties stipulated the three bullets recovered in the alley and the bullet recovered in a patio were fired from the Smith and Wesson .38-caliber revolver found in the freezer at Venegas's apartment.

*Defense*

Figueroa testified in his defense. He said he lived in Santa Ana, "[j]ust around the street" from where the shooting occurred in Tustin. He said he got drunk and consumed methamphetamine on the day of the incident and became paranoid. He said he had a gun with him for protection. Because he was paranoid from the methamphetamine, he thought Thompson might be with another gang and trying to set him up.

After walking away from Thompson, he continued to worry about Thompson. He thought Thompson might come after him. Figueroa wanted to "hide out." He drank a beer he had with him and saw Thompson running into an alley. Figueroa went to a wall by an apartment complex, looked over the wall, and started shooting. He shot because he was paranoid about whether Thompson was a member of the Maniac gang and thought he might be going for a gun or to get other members of his gang. Figueroa did not see any police or police cars in the area. He shot because he thought Thompson might hear the gunshots and not come after him. He denied attempting to kill Thompson or any police officers.

After shooting, Figueroa ran to his right and into an apartment complex. He heard sirens and a helicopter. He remembered making his way to an apartment with three women in it. When he told them he just shot (or killed) "a cop," it was because he

6

had begun to think maybe Thompson was a police officer. Figueroa did not remember much about being inside the apartment, but he remembered the women leaving.

## DISCUSSION

1. Pitchess *Review*

In *Pitchess*, the California Supreme Court "held a criminal defendant could obtain discovery of certain law enforcement personnel records upon a sufficient showing of good cause." (*Riverside County Sheriff's Dept. v. Stiglitz* (2014) 60 Cal.4th 624, 630.) The Legislature subsequently "'codified the privileges and procedures surrounding'" *Pitchess* motions. (*Riverside,* at. p. 630.) Section 832.5, subdivision (a)(1) requires law enforcement departments to investigate complaints against their personnel. The complaints and the reports of the resulting investigations must be maintained in either the officer's personnel file or such other files as designated by the officer's agency. (§ 832.5, subd. (b).) Records maintained pursuant to section 832.5 "are confidential and shall not be disclosed in any criminal or civil proceeding except by discovery pursuant to Sections 1043 and 1046 of the Evidence Code." (§ 832.7, subd. (a).)

"[O]n a showing of good cause, a criminal defendant is entitled to discovery of relevant documents or information in the confidential personnel records of a peace officer accused of misconduct against the defendant. [Citation.] Good cause for discovery exists when the defendant shows both '"materiality" to the subject matter of the pending litigation and a "reasonable belief" that the agency has the type of information sought.' [Citation.]" (*People v. Gaines* (2009) 46 Cal.4th 172, 179.) The showing of materiality only requires the defendant to "demonstrate only 'a logical link between the defense proposed and the pending charge' and describe with some specificity 'how the discovery being sought would support such a defense or how it would impeach the officer's version of events' [citation]." (*Id*. at p. 182.) The specificity requirement only requires a plausible assertion of a factual scenario that might have occurred. "Such a scenario is plausible because it presents an assertion of specific police misconduct that

7

is both internally consistent and supports the defense proposed to the charges." (*Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1026.)

When a defendant has made the requisite good cause showing, the court retires to chambers to review the records and then orders "disclosure of information 'relevant to the subject matter involved in the pending litigation.' [Citation.]" (*People v. Thompson* (2006) 141 Cal.App.4th 1312, 1316.)

A trial court has broad discretion in ruling on a *Pitchess* motion. (*People v. Samayoa* (1997) 15 Cal.4th 795, 827.) Accordingly, we review the court's decision for an abuse of discretion. (*People v. Jackson* (1996) 13 Cal.4th 1164, 1220-1221.)

Figueroa brought motions to discover whether Gomez and Lopez had information in their personnel files evidencing a lack of credibility, or prior acts of moral turpitude. The trial court conducted an in camera review of the personnel files of both individuals and concluded no discoverable material existed as to Lopez, but ordered disclosure of one item of discovery as it related to Gomez. A sealed transcript of the in camera hearing was made a part of the appellate record. The record also included a thumb drive submitted by the custodian of records. Figueroa asks us to independently review the in camera record and the thumb drive. We have done so and find no further discoverable material. The trial court did not abuse its discretion.

2. *Prosecutorial Misconduct*

Figueroa next argues the prosecutor repeatedly committed misconduct during his argument to the jury.

"It is settled that a prosecutor is given wide latitude during argument. The argument may be vigorous as long as it amounts to fair comment on the evidence, which can include reasonable inferences, or deductions to be drawn therefrom. [Citations.]" (*People v. Wharton* (1991) 53 Cal.3d 522, 567.) The prosecutor acts improperly when he or she misstates or mischaracterizes the evidence (*People v. Avena* (1996) 13 Cal.4th 394, 420), vouches for the credibility of a witness (*People v. Dickey* (2005) 35 Cal.4th 884,

8

913-914), impugns the integrity of defense counsel or casts aspersions on defense counsel (*People v. Edwards* (2013) 57 Cal.4th 658, 738), misstates the applicable law (*People v. Marshall* (1996) 13 Cal.4th 799, 831), or appeals for sympathy for a victim (*People v. Arias* (1996) 13 Cal.4th 92, 160 (*Arias*)). "[W]hen the claim focuses upon comments made by the prosecutor before the jury, the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion." (*People v. Samayoa, supra*, 15 Cal.4th at p. 841.) There is no requirement that a prosecutor act with bad faith. Injury to a defendant "''is nonetheless an injury because it was committed inadvertently rather than intentionally.'''" (*People v. Hill* (1998) 17 Cal.4th 800, 822 (*Hill*).)

"'The applicable federal and state standards regarding prosecutorial misconduct are well established. "'A prosecutor's . . . intemperate behavior violates the federal Constitution when it comprises a pattern of conduct "so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process."'" [Citations.] Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves "''the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury."'' [Citation.]'" (*Hill, supra*, 17 Cal.4th at p. 819.)

"To preserve a claim of prosecutorial misconduct for appeal, a defendant must make a timely and specific objection and ask the trial court to admonish the jury to disregard the improper argument." (*People v. Gonzales and Solis* (2011) 52 Cal.4th 254, 305.) The failure to object or ask for a curative admonishment will not preclude an appellate court from addressing the claim of misconduct if the objection or request for admonition would have been futile. (*Hill, supra*, 17 Cal.4th at p. 820.) Moreover, a failure to request the jury be admonished will not result in forfeiture of the issue if admonishment "'''would not have cured the harm caused by the misconduct'''" or if the

defendant's objection was overruled and thus, there was no opportunity to request admonition.  (*Ibid.*)

### A.  Justice for the Victims of Counts 1 Through 3

Figueroa first argues the prosecutor committed misconduct when he argued that if the jury were to find Figueroa lacked the intent to kill in connection with counts 1 through 3, then the jury would not be doing its job, it would deny the victims (Gomez, Lopez, & Thompson) justice, and it would be giving Figueroa a free pass.  Defense counsel's objection to the comment was overruled.  While "'an appeal for sympathy for the victim is out of place during an objective determination of guilt'" (*Arias, supra*, 13 Cal.4th at p. 160), whether the prosecutor's act was misconduct or not in this instance, it is clear the prosecutor's comment did not adversely affect the jury's verdict: the jury acquitted Figueroa of all three counts of attempted murder.

### B.  Misstating the Law on Intent

The prosecutor told the jury, "Intent is not an issue with hostage-taking or shooting at a car or house."  Figueroa contends this statement misstated the law, prejudiced him, and requires reversal.

### i.  Section 210.5

Section 210.5 makes it a felony for one "who commits the offense of false imprisonment, as defined in Section 236, against a person *for purposes of protection from arrest*, which substantially increases the risk of harm to the victim, or for purposes of using the person as a shield[.]"  (Italics added.)  Section 236, in turn, prohibits "the unlawful violation of the personal liberty of another."  To violate section 236, a prerequisite to a violation of section 210.5, a defendant must do an act "with the intent of causing the confinement."  (*People v. Ross* (1988) 205 Cal.App.3d 1548, 1554.)  When the definition of a crime requires the defendant's intent to "'"achieve some additional consequence, the crime is deemed to be one of specific intent."'  [Citations.]"  (*People v. McDaniel* (1979) 24 Cal.3d 661, 669.)  In section 210.5, the intent required is that the

10

person be confined for purposes of avoiding arrest. Thus, contrary to the prosecutor's statement, section 210.5 requires a specific intent.

Although the prosecutor misstated the law in connection with section 210.5, Figueroa's argument fails. During the prosecutor's argument, Figueroa's counsel objected to the prosecutor's statement and the court sustained the objection, but counsel did not ask for a curative admonishment. Consequently, the issue has been forfeited. (*Hill, supra*, 17 Cal.4th at p. 820.)

Were we to address the issue, Figueroa's argument would still fail. The defense conceded Figueroa's guilt on the charge of taking a hostage in violation of section 210.5. Moreover, the evidence of his guilt on this charge was overwhelming.

*ii. Section 246*

Shooting at an inhabited dwelling or an occupied motor vehicle in violation of section 246 is a general intent crime. (*People v. White* (2014) 230 Cal.App.4th 305, 316.) "'[T]he act of shooting "at" a proscribed target is . . . committed when the defendant shoots in such close proximity to the target that he shows a conscious indifference to the probable consequence that one or more bullets will strike the target or persons in or around it.' [Citation.] . . . In other words, the statute does not require a specific intent to achieve a particular result (e.g., strike an inhabited or occupied target, kill or injure). [Citation.] Instead, the statute only requires a shooting under facts or circumstances that indicate a conscious disregard for the probability that one of these results will occur.' [Citation.]" (*Id*. at pp. 316-317.)

Accordingly, section 246 is a general intent crime. To the extent the prosecutor's argument is taken to mean the crime does not require a specific intent, the statement was not inaccurate and did not misstate the law with regard to shooting at an inhabited dwelling or at an occupied motor vehicle.

Again, however, the issue has been forfeited because there was no request for an admonishment.

11

### C. Prosecutor's Expression of His Personal Belief

While addressing the gang enhancement allegation (§ 186.2, subd. (b)(1)), the prosecutor stated he did not have to prove Figueroa was a member of the Los Wickeds gang and, "I do not believe that [Figueroa] was out [of the gang]." Defense counsel objected and the court admonished the jury that it "[m]akes no difference what [the prosecutor] believes." The trial court was correct. This issue need not detain us long. Even were we to assume the prosecutor's statement was erroneous, there was no possible prejudice to Figueroa. Jurors are presumed to follow the court's admonishments (*People v. Hill* (1992) 3 Cal.4th 959, 1011, overruled on other grounds in *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1069, fn. 13) and the court instructed the jury the prosecutor's belief is irrelevant. But more to the point, the jury's finding the alleged gang enhancements were "Not True" establishes beyond any possible doubt that it *rejected* the prosecutor's belief.

Later in his argument to the jury, when the prosecutor was addressing Figueroa's use of methamphetamine on the day of the incident and Figueroa's intoxication defense, the prosecutor stated, "We don't know – there might have been meth in his blood. Sure. Maybe he did use earlier that day. We'll never know. But you can't speculate to that. And the evidence shows that whatever meth, if any he had, which I don't think he had any." Defense counsel's objection was sustained, but an admonishment was not requested. The failure to request an admonishment forfeited the issue on appeal. (*Hill, supra*, 17 Cal.4th at p. 820.)

Immediately after the court sustained the objection, the prosecutor stated he did not "think the evidence shows [Figueroa] had any to the point of intoxication defense here." There was no objection to this last statement. The issue is forfeited. (*Hill, supra*, 17 Cal.4th at p. 820.)

Although a prosecutor commits misconduct when expressing a belief based on facts not in evidence (*People v. Fosselman* (1983) 33 Cal.3d 572, 580), reading the

12

prosecutor's comments in context, it is clear the prosecutor was "arguing points and drawing evidentiary inferences." (*People v. Farnam* (2002) 28 Cal.4th 107, 171.) As the court found in *People v. Osband* (1996) 13 Cal.4th 662, the use of "'I think'" in this context "appears to be a purely rhetorical device" and not misconduct. (*Id*. at p. 722.)

### D. *Misstating the Law on Voluntary Intoxication*

The jury was instructed on voluntary intoxication pursuant to a modified version of CALCRIM No. 625: "You may consider evidence, if any, of the defendant's voluntary intoxication only in a limited way. You may consider that evidence only in deciding whether the defendant acted with an intent to kill and/or the defendant acted with deliberation and premeditation and/or the defendant acted with the specific intent to promote, further, and assist in criminal conduct by members of Los Wickeds. . . ." During his summation, the prosecutor told the jury that to qualify as a defense, one must be so intoxicated "that you can't even form, you know, rational—not even rational, but you can't—you don't even know what you are doing. Right? Someone puts toothpaste on the tooth brush forming the intent to brush their teeth. This person would . . . put tooth paste on a tooth brush and they would be thinking like they are making a tuna sandwich." Defense counsel's immediate objection that the prosecutor's statement misstates the law was sustained. Again, however, no curative admonition was requested and the issue has been forfeited. (*Hill, supra*, 17 Cal.4th at p. 820.)

Even were we to ignore the forfeiture issue and assume the prosecutor misstated the law, any error would have been harmless under both federal and state standards. (*Chapman v. California* (1967) 386 U.S. 18, 24; *People v. Watson* (1956) 46 Cal.2d 818, 836.) The voluntary intoxication instruction was given in connection with the attempted murder charge and the gang enhancement allegations. The jury acquitted Figueroa of all three attempted murder charges and found the gang enhancements not true. The instruction undoubtedly had no prejudicial effect on the jury's decision on the issues to which the instruction and argument applied.

13

*E. Attacking the Integrity of Defense Counsel*

It is misconduct for a prosecutor to impugn the integrity of defense counsel (*People v. Edwards, supra*, 57 Cal.4th at p. 738)  Figueroa next argues the prosecutor committed misconduct when he accused the defense investigator of giving "biased" and "manipulative" testimony.

In his closing argument to the jury the prosecutor stated:  "Okay. Fact versus fiction.  The Defense version of truth, but not what the witnesses said.  When we came back from lunch that first half hour or so of the Defense closing was basically a narrative.  It was her story to you about her interpretation of the events or -- it was a story never bringing you back to the actual evidence.  And when she would highlight some of the evidence, she would misrepresent what actually happened."  Defense counsel objected, stating it was improper argument.  The court sustained the objection, but no curative admonishment was requested or given.

Earlier, in his opening address to the jury, the prosecutor asked the jury, "Would you conclude it's reasonable to adopt the interpretation that points to innocence on the basis of [the defense investigator's] biased, manipulative testimony?"  Defense counsel's objection was sustained, but counsel did not request a curative admonition.

The failure to request curative admonishments forfeited these issues.  (*Hill, supra*, 17 Cal.4th at p. 820.)  Even were we to overlook the forfeiture, Figueroa makes *no* attempt to demonstrate how these two statements by the prosecutor, both of which had objections to them sustained, were so egregious they infected the trial with such unfairness as to render the conviction a denial of due process or render his trial fundamentally unfair.  (*People v. Edwards, supra*, 57 Cal.4th at pp. 658, 737.)

*F. Cumulative Prejudicial Effect of Misconduct*

Figueroa argues the pattern of misconduct requires reversal because it is reasonably probable he would have received a more favorable verdict but for the misconduct.  We disagree.

14

First, each claimed error was forfeited.  Second, the claimed misconduct does not, in this case, cumulate.  The misconduct in seeking sympathy for the victims of the attempted murder charges was harmless beyond a reasonable doubt.  The jury rejected the prosecutor's request and acquitted Figueroa of the attempted murder charges.  Misstating the law on hostage taking was also harmless beyond a reasonable doubt, as his guilt was conceded.  The misconduct, if any, in the prosecutor stating he did not believe Figueroa left the gang was harmless beyond a reasonable doubt because the jury rejected the prosecutor's belief when it found the gang enhancement allegations not true.  The misconduct in misstating the law on voluntary intoxication was harmless beyond a reasonable doubt.  That instruction was given in connection with the attempted murder charges and the jury acquitted Figueroa on each of those counts.  Lastly, absolutely no effort has been made to demonstrate how the misconduct in the manner in which the prosecutor referred to defense counsel and the testimony of the defense investigator resulted in any prejudice to Figueroa.

3. *Disparity Between Pronouncement of Judgment and the Abstract of Judgment*

In addition to imposing a prison sentence of 15 years and four months, the trial court imposed a $300 state restitution fine and a $300 parole revocation fine, the latter suspended until such time, if ever, as Figueroa violates parole.  The abstract of judgment, however, includes a court operations assessment of $200 (§ 1465.8) and a conviction assessment of $150 (Gov. Code, § 70373).  Figueroa argues the assessments contained in the abstract of judgment, but not imposed by the court orally, must be stricken.

Generally speaking, the court's oral pronouncement of judgment prevails over the clerk's minute order (*People v. Farrel* 2002) 28 Cal.4th 381, 384, fn. 2) or the abstract of judgment (*People v. Samaneigo* (2009) 172 Cal.App.4th 1148, 1183).  This is because the oral pronouncement of judgment, not the abstract of judgment, is the judgment of the court.  (*Ibid.*)  Entry of the judgment into the court's minutes is a clerical

15

function (§ 1207) and cannot change the judgment. Thus, an abstract that does not accurately reflect the orally pronounced judgment is a clerical error which the courts have the inherent power to correct. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.)

Section 1465.8, subdivision (a)(1), provides: "To assist in funding court operations, an assessment of forty dollars ($40) *shall be imposed on every conviction for a criminal offense*, including a traffic offense, except parking offenses as defined in subdivision (i) of Section 1463, involving a violation of a section of the Vehicle Code or any local ordinance adopted pursuant to the Vehicle Code." (Italics added.) Figueroa was convicted of five felonies, thus the $200 court operations assessment.

Government Code section 70373, subdivision (a)(1) provides: "To ensure and maintain adequate funding for court facilities, an assessment *shall be imposed on every conviction for a criminal offense*, including a traffic offense, except parking offenses as defined in subdivision (i) of Section 1463 of the Penal Code, involving a violation of a section of the Vehicle Code or any local ordinance adopted pursuant to the Vehicle Code. The assessment shall be imposed in the amount of thirty dollars ($30) for each misdemeanor or felony and in the amount of thirty-five dollars ($35) for each infraction." (Italics added.) The $150 assessment in the abstract of judgment reflects the fact that Figueroa was convicted of five felonies.

Imposition of assessments under the Penal Code and the Government Code are mandatory. (*People v. Woods* (2010) 191 Cal.App.4th 269, 272.) Accordingly, the sentencing court was required to impose these fees. It erred in failing to do so.

While the clerk of the superior court had no authority to include in the abstract of judgment fees not imposed by the court orally, and they must be stricken, because imposition of the fees is mandatory, the matter must be remanded for the court to impose the assessments. In pointing out he had no opportunity to object to imposition of the assessments, Figueroa seems to suggest an inability to pay the assessments may excuse their imposition. (*People v. Dueñas* (2019) 30 Cal.App.5th 1157, 1168-1169; but

16

see *People v. Allen* (2019) 41 Cal.App.4th 312, 318 [*Dueñas* wrongly decided].)  He may make any objection he has on remand.

## DISPOSITION

The section 1465.8 assessment fee and the Government Code section 70373 assessment fee are ordered stricken from the abstract of judgment.  The matter is remanded for the court to delineate the fees and assessments, to prepare an amended abstract of judgement accordingly, and forward a copy to the Department of Corrections and Rehabilitation.  The judgment is otherwise affirmed.


THOMPSON, J.

WE CONCUR:


ARONSON, ACTING P. J.


GOETHALS, J.

17